UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-61890-CIV-DAMIAN

**STATE OF FLORIDA**,

    Plaintiff,

v.

**PETE BUTTIGIEG**, *et al.,*

    Defendants.

_____/

## ORDER ON JOINT MOTION TO INTERVENE [ECF NO. 10]

**THIS CAUSE** is before the Court on non-parties Amalgamated Transit Union International ("ATU") and Transport Workers Union of America's ("TWU") (collectively, the "Proposed Intervenors") Joint Motion to Intervene as Defendants [ECF No. 10 (the "Joint Motion" or "Motion to Intervene")], filed October 24, 2024.

**THE COURT** has carefully reviewed the Joint Motion, the Response and Reply thereto [ECF Nos. 14 (the "Response"), 15 (the "Reply")], the pertinent portions of the record, and the applicable law and is otherwise fully advised in the premises. The Court also heard argument from the parties, who appeared before the undersigned on July 24, 2024 [ECF No. 30].

In the Joint Motion, the Proposed Intervenors seek to intervene as Defendants in this pending lawsuit brought by the State of Florida (the "State") against the United States Department of Labor ("DOL") and others. For the reasons that follow, the Court grants the Joint Motion to Intervene.

## I.  BACKGROUND

### A.  *The Federal Transit Act*

As laid out in the Complaint, under the Federal Transit Act ("FTA"), 49 U.S.C. § 5301(a), the State of Florida receives substantial federal funding for its transit systems, which is used to make improvements and repairs to public rail and bus systems. According to the Complaint, Florida entities expect to receive close to $800 million in Federal Transit Act funding in the coming years. *See* ECF No. 1 ("Complaint") ¶ 27. This funding is, however, subject to conditions, set forth in § 5333(b) of the FTA, also known as § 13(c) (herein referred to as "§ 13(c)"), which are administered by the DOL. One of those conditions is that grantees, like the State and Miami-Dade and Broward Counties, must agree to "arrangements the Secretary of Labor concludes are fair and equitable" to protect "interests of the employees" affected by the grants. *Id.* ¶¶ 28–29 (citing 49 U.S.C. § 5333(b)(1)).

As the State points out, Congress included these limitations to protect collective bargaining rights of unionized transit workers because the Act contemplated that some of the federal funds would be used by local governments to acquire failing private transit companies whereas some states had laws in place that forbade collective bargaining by state and local government employees. *See* Comp. ¶ 30. In the instant case, the State and DOL are at odds over the effect of the limitations in § 13(c) requiring "provisions that may be necessary for . . . the continuation of collective bargaining rights." 49 U.S.C. § 5333(b)(2)(B).

### B.  *Senate Bill 256*

This lawsuit stems from Florida's passage of Senate Bill 256 ("SB 256") and subsequent actions by the DOL and the Florida Public Employee Relations Commission

2

("PERC")[1] in response to SB 256. According to the Complaint, SB 256 brings about some changes to how public sector employees and unions in Florida handle bargaining. These changes include stopping public sector employers from deducting union dues from employee salaries without authorization, as well as introducing a yearly renewal and certification process for public transit unions that requires approval based on a 60% union membership threshold by PERC. *See* Comp. ¶¶ 43–45. According to the State, these changes are "designed to ensure that public employees in Florida make a conscious and deliberate decision regarding their constitutional right to participate or not participate in a union" and to ensure that public sector unions act as the "exclusive bargaining agent" for these employees based on the 60% threshold delineated by SB 256. *Id.* ¶ 46. The Bill implicates § 13(c)'s provision that states that grant agreements "shall include provisions that may be necessary for . . . the continuation of collective bargaining rights." 49 U.S.C. § 5333(b)(2)(B).

        **C.**     *Notices To Miami-Dade And Broward Counties Regarding The Impact Of SB 256.*

Two events precipitated this action. *See* Comp. ¶¶ 53–56. First, on August 4, 2023, the DOL notified Broward County, a grant applicant, that adjustments in bargaining due to SB 256 impacted compliance with grant funding conditions. *See* ECF No. 1-3. A similar message was sent to Miami-Dade County on July 19, 2023. *See* Declaration of Willie Brown [ECF No. 10-2 ("Brown Decl.")] ¶ 11. Second, PERC issued a decision on Broward County's grant application on August 31, 2023, expressing concerns over the DOL's interpretation of § 13(c) but granting a non-time-limited waiver to prevent the State from not receiving the federal

---

[1] PERC is responsible for resolving disputes between employees, employers, and unions, and for certifying unions. *See* §§ 447.201(3), 447.207, 447.305, Fla. Stat. (2024).

funds.[2] *See* Comp. ¶ 54. Other Florida transit agencies also received waivers. *Id.* ¶ 55. Ultimately, these waivers were conditional, in that they expire "upon any final decision of [the DOL] or court of competent jurisdiction declaring the above-stated provisions do not violate the protections imposed by 49 U.S.C. § 5333(b)." Comp. ¶ 56 (citing ECF No. 1-4 at 13).

D.   *The Proposed Intervenors*

ATU, an international labor union, and its affiliated local unions represent over 3,000 state and local transit employees in Florida. *See* Declaration of Daniel B. Smith [ECF No. 10-1 ("Smith Decl.")] ¶ 2. This includes around 950 Broward County transit workers. *Id.* TWU, a national union, represents 3,000 Florida transit employees, with over 2,500 from Miami-Dade County. *See* Brown Decl. ¶¶ 2–3. The rights of these public transit workers represented by ATU and TWU are protected under § 13(c) of the FTA.

As discussed above, § 13(c) requires that, in order for grantees to receive mass transit federal assistance, state public transit employees' interests must be protected. 49 U.S.C. § 5333(b). These protections are designed to ensure that existing collective bargaining agreements are upheld and bargaining rights continue. *See* § 13(c)(1)–(2). Section 13(c) specifically provides that "[a]s a condition of financial assistance," grantees must agree to "arrangements the Secretary of Labor concludes are fair and equitable" to protect "interests of the employees" affected by the grants. 49 U.S.C. § 5333(b)(1). Transit bodies and unions, like ATU and TWU, negotiate these "§ 13(c) agreements" to secure these safeguards for

---

[2] SB 256 authorizes PERC to "waive" the statute's provisions "to the extent necessary for the public employer to comply with the requirements of [§ 13(c)]." *See* § 447.207(12), Fla. Stat. (2024).

4

employees, which enables the release of federal grant funds upon the DOL's certification. *See generally Jackson Transit Auth. v. Local Div. 1285, ATU*, 457 U.S. 15, 18–29 (1982).

As the Proposed Intervenors explain, there are instances where a state legislature, having control over transit agencies within its borders, passes laws that some transit unions feel do not fully uphold the protections outlined in § 13(c). In these situations, the unions can raise objections to the DOL's certification of compliance with the conditions of § 13(c) for federal grant requests. If the DOL deems these objections valid, it could delay certification until the state takes actions to address and remediate the concerns raised by the unions.

According to ATU, it played a role in advocating for the inclusion of § 13(c) in the FTA. *See* Smith Decl. ¶ 3.a. ATU indicates that it has also been involved in numerous grant applications where compliance with § 13(c) was a focal point and that in the 1980s, both ATU and its local affiliates were involved in court cases that influenced how § 13(c) was interpreted and implemented. *See id.* ¶¶ 3.c–d. Additionally, ATU states that it has actively participated in administrative proceedings before the DOL that led to the instant litigation. *See id.* ¶ 4.

Similarly, TWU represents that it has been active in efforts related to § 13(c), including suggesting amendments and expansions, and that it has taken part in Congressional hearings on labor protections. Jt. Mot. at 4. TWU collaborates with the DOL on the issuance of regulations and guidelines applying § 13(c)'s protections. If TWU has concerns that a grant seeker does not fulfill § 13(c) criteria, it challenges the DOL's approval for transit grants, *see* Brown Decl. ¶¶ 7–8, as seen in this case involving Florida grant applicants, like Miami-Dade County. *See id.* ¶¶ 9–11.

## II. PROCEDURAL HISTORY

### A. *The Instant Lawsuit.*

On October 4, 2023, Plaintiff, the State of Florida ("Florida" or the "State"), filed a Complaint for Preliminary and Permanent Injunctive and Declaratory Relief, naming the DOL, the United States of America, the Department of Transportation, and the relevant officials within those agencies as Defendants (collectively, "Defendants"). *See generally* Comp. Florida seeks to stop enforcement of the positions outlined in the above-referenced notices to Broward and Miami-Dade Counties regarding the impact of SB 256.

The State argues that this legal action is necessary on grounds the DOL's position with respect to SB 256 may violate rights and administrative law standards. In particular, Florida first claims that § 13(c) is unconstitutional because it violates the Spending Clause's requirement that, to pass constitutional muster, any attached condition to federal funds must be unambiguous. *See* Comp. ¶¶ 60–69. Second, the State challenges the DOL's understanding and use of § 13(c) as per the Administrative Procedure Act (the "APA"), noting that under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, . . . or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C); Comp. ¶¶ 71–80. Florida also cites precedents that restrict the application of §13(c)(2) to avoid removing collective bargaining rights for transit workers affiliated with specific unions.

### B. *Pending Motions.*

Florida filed a Motion for Preliminary Injunction seeking the issuance of an order preliminarily enjoining Defendants from enforcing the requirements in § 13(c) against Florida entities or, alternatively, ordering Defendants to provide the funding without requiring PERC

6

to waive SB 256's provisions. *See generally* ECF No. 6. On October 19, 2023, the parties filed a Joint Motion for Consolidated Briefing Schedule [ECF No. 8], requesting that the Court consolidate the preliminary injunction hearing with a final hearing on the merits under Federal Rule of Civil Procedure 65(a)(2). *See generally* ECF No. 8. Notably, the parties agreed therein that Defendants did not need to file an answer to the Complaint.[3] *Id.* at 2, ¶ e.

The Proposed Intervenors filed the Motion to Intervene, now before the Court, on October 24, 2023, seeking to intervene as Defendants in this lawsuit.[4] The Joint Motion to Intervene is ripe for adjudication.

### III.   LEGAL STANDARDS

#### A.   *Mandatory Intervention.*

A party may move to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). To succeed, that party must make four showings: (1) that the application to intervene is timely; (2) that the party has an interest in the subject of the action; (3) that, absent intervention, disposition of the action might as a practical matter impede or impair their ability to protect their interest; and (4) their interest is not adequately represented by the existing parties. *See Huff v. Comm'r of IRS*, 743 F.3d 790, 795–96 (11th Cir. 2014) (quoting *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302–03 (11th Cir. 2008)); *see also* Fed. R. Civ. P. 24(a)(2).

---

[3] On October 27, 2024, the Court granted the parties' Joint Motion for Consolidated Briefing in all respects. [ECF No. 11 (the "Briefing Order")]. The parties, including the Proposed Intervenors, have fully briefed the State's Motion for Preliminary Injunction pursuant to the Court's Briefing Order, which remains pending before the Court.

[4] The Certificate of Conferral in the Joint Motion represents that Defendants do not oppose intervention. Jnt. Mot at 14.

7

### B. Permissive Intervention.

Federal Rule of Civil Procedure 24(b) governs permissive intervention. "Permissive intervention . . . is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Mt. Hawley Ins. Co. v. Sandy Lakes Props., Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005) (alteration added; quotation marks and citation omitted). A district court has broad discretion to allow or disallow permissive intervention "even if both of those requirements are met[.]" *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (alteration added; citation omitted); *see also Tursom v. United States*, No. 20-cv-20811, 2021 WL 3493207, at *3 (S.D. Fla. Aug. 9, 2021) (noting that "a district court can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion" (quotation marks and citation omitted)). In exercising that discretion, the district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### IV. DISCUSSION

The Proposed Intervenors argue that they may intervene as of right, or alternatively, that the Court should exercise its discretion to permit intervention under Rule 24(b). *See* Jnt. Mot. at 7–14. As set forth below, this Court finds that the Proposed Intervenors have defenses that share questions of law and fact with the main action and that intervention will not unduly prejudice or delay the adjudication of the rights of the parties in the main action. Therefore, it is within this Court's discretion to permit intervention to assure that all disputes are resolved in a single action, and the Court need not address the issues raised regarding whether the Proposed Intervenors may intervene as of right.

8

### A.     Whether The Proposed Intervenors May Intervene Under Rule 24(b).

As explained above, parties that seek permissive intervention must meet two requirements: (1) their motion must be timely and (2) their claim(s) or defense(s) must have a question of law or fact in common with the main action. *See* Fed. R. Civ. P. 24(b); *Chiles*, 865 F.2d at 1213.

The Proposed Intervenors submit that their Joint Motion is timely and that their interests set out questions of law and fact in common with the main action. Jnt. Mot. at 13–14. ATU and TWU also posit that their participation in this case "will add materially to the instant litigation," *AFSCME Council 79 v. Scott*, 278 F.R.D. 664, 671 (S.D. Fla. 2011) (Ungaro, J.), given their historical participation in various proceedings related to the interpretation, expansion, and enforcement of § 13(c). Jnt. Mot. at 13–14.

Florida argues that the Proposed Intervenors have failed to demonstrate an interest that the Proposed Intervenors intend to protect by failing to identify a claim or defense they intend to assert. Resp. at 10. They further state that, to the extent the Proposed Intervenors have in fact identified such an interest, the interest would be fully protected by filing an amicus brief. *Id.*

  1. <u>Timeliness</u>.

ATU and TWU first assert that they have acted expeditiously in filing their Joint Motion. Jnt. Mot. at 8. They argue that the Joint Motion carries no risk of undue delay in the resolution of this lawsuit because the Motion was filed less than three weeks after the filing of the State's Complaint. *Id.* They also point out that the Joint Motion would be fully briefed well before the dispositive motions deadline set out by the Court's Briefing Order (*see* ECF No. 11), and they commit to tendering their dispositive motions by that deadline (December

9

15, 2023) in an effort to avoid any disruption with the briefing schedule proposed by the parties. *Id.* Florida, for its part, raises no argument in response and, therefore, does not dispute that the Joint Motion was timely.

The record in this case bears out the conclusion that the Proposed Intervenors satisfied the timeliness requirement. As they point out in their Joint Motion, the Motion was filed shortly after the Complaint and was fully briefed by November 14, 2023. *See* ECF No. 15 (the "Reply"). The Court finds that the timeliness requirement is met.

    2. <u>Whether The Proposed Intervenors' Defenses Share Questions Of Law Or Fact</u>.

"The 'claim or defense' portion of the rule has been construed liberally, and indeed the Supreme Court has said that it 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'" *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975)[5] (quoting *Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940)). The intervening party, however, "must demonstrate more than a general interest in the subject matter of the litigation before intervention should be allowed." *Alexander v. Hall*, 64 F.R.D. 152, 157 (D.S.C. 1974).

Here, the Proposed Intervenors argue that this Court's determination regarding the DOL's position on SB 256's compliance with § 13(c) would have a direct effect on the collective bargaining rights of the employees they represent, not only within the State, but potentially nationwide. This Court agrees that because the outcome of this case implicates, and may impair, the collective bargaining rights of employees represented by ATU and TWU,

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit issued prior to October 1, 1981.

the Proposed Intervenors undoubtedly have more than a general interest in this lawsuit. Likewise, as demonstrated by the Proposed Intervenors' briefing in connection with the dispositive motions pending before the Court, they have also shown that they have defenses to Florida's claims against the Defendants that share common questions of law regarding the constitutionality and proper interpretation of § 13(c)(2). For example, the Proposed Intervenors, like DOL, also contend that SB 256 diminishes collective bargaining rights in violation of § 13(c) and thus precludes certification of compliance with the statute. *See* Jnt. Mot. at 8.

As discussed above, a district court has broad discretion to allow or disallow permissive intervention. *Chiles,* 865 F.2d at 1213; *Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983) ("[T]he decision whether to allow permissive intervention is within the discretion of the district court, and may be reversed only for a clear abuse of discretion." (citing *Cisneros v. Corpus Christi Independent School District,* 560 F.2d 190, 191 (5th Cir. 1977), *cert. denied,* 434 U.S. 1075 (1978); *Korioth v. Briscoe,* 523 F.2d 1271, 1278 (5th Cir. 1975))). In exercising that discretion, the district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). At this point, more than eight months after filing the Joint Motion, the Proposed Intervenors have filed briefing in connection with the dispositive motions on the same schedule as the parties, and to date, their participation has not delayed the proceedings or the parties' rights. The Proposed Intervenors did in fact fully comply with the Court's Briefing Order, as evidenced by their filing of dispositive motions. *See* ECF Nos. 16, 17. The Proposed Intervenors' filings show no indication that their involvement in this action has caused or will cause any disruptions. When pressed at the hearing on the Joint Motion, the State was unable

to articulate any prejudice it would suffer as the result of the intervention and agreed that the Proposed Intervenors' involvement to date has not caused any delays.

This Court finds that the Intervenors have met their burden to demonstrate permissive intervention. As discussed above, the Proposed Intervenors have a direct interest in this lawsuit, and they have asserted defenses that undeniably overlap with those asserted by the Defendants. Further, the lack of prejudice to the existing parties is a factor that weighs in favor of permissive intervention. *See Mt. Hawley Ins. Co.*, 425 F.3d at 1312 ("Permissive intervention under Fed. R. Civ. Proc. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties."). The Proposed Intervenors have represented that they will act expeditiously so as not to cause any delay in the proceedings going forward, and they have already demonstrated as much. Therefore, there will be no delay in the adjudication of the rights of the parties, and the Court has no reason to believe otherwise. *See McIntire v. Mariano*, No. 18-CV-60075, 2019 WL 78982, at *7 (S.D. Fla. Jan. 2, 2019).

### C. Whether The Failure To Attach A Pleading Is Fatal To The Proposed Intervenors' Motion.

The Court also addresses the State's argument that the Court should deny the Joint Motion for failure to attach a pleading pursuant to Rule 24(c).[6]

---

[6] In line with the Court's Briefing Order that absolved Defendants from filing an answer to the Complaint (*see* ECF No. 11 at 2, ¶ f.), the Proposed Intervenors have requested that this Court waive the requirement that they attach a pleading to the Motion to Intervene, pursuant to Rule 24(c). Jnt. Mot at 1–2.

Rule 24(c) states that a motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Florida's Response, in large part, is dedicated to arguing that the Motion to Intervene prejudices them because, without an attached pleading, the Motion fails to explain what defense the Proposed Intervenors intend to assert. *See* Resp. 4–7. The State acknowledges that the Eleventh Circuit has held that compliance with Rule 24(c)'s pleading requirement may be overlooked when the omission of the pleading constitutes a "nonprejudicial technical defect." *Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir. 1985).

In response to this point, the Proposed Intervenors argue that their Motion to Intervene adequately lays out and explains their precise interests in this case, which renders the omission of a proposed pleading a "nonprejudicial technical defect."

This Court agrees that the Proposed Intervenors have sufficiently demonstrated the precise interests implicated (and possibly threatened) in this action; that is, (1) that the Proposed Intervenors are labor unions that represent thousands of public transit employees in Florida; (2) that § 13(c) affords the union-represented employees certain legal rights and protections; and (3) that the outcome of this litigation will have an effect on the collective bargaining rights of the employees represented by the Proposed Intervenors.

Importantly, as the Proposed Intervenors point out, the State expressly agreed to and, along with Defendants, moved this Court to issue an Order excusing Defendants from having to file an answer to the Complaint. *See* ECF No. at 8, ¶ e. ("Defendants do not need to otherwise file an answer to the Complaint."); ECF No. 11 at 2, ¶ f. ("Defendants need not otherwise file their Answer to the Complaint."). Thus, it is difficult to see how the lack of a proposed pleading by the Proposed Intervenors prejudices the State given that the Defendants

have not yet asserted their defenses in a pleading. Instead, this Court finds that requiring "[a]n additional pleading, which merely replicate[s] [the Motion to Intervene] would . . . be[] surplusage." *Piambino*, 757 F.2d at 1121.

Accordingly, under these circumstances, the Proposed Intervenors' failure to attach a pleading is of no consequence and is not a grounds to deny intervention.

## V.   CONCLUSION

For the reasons set forth above, this Court finds that the Proposed Intervenors have met their burden to demonstrate permissive intervention, and, as such, the Court need not address whether they have demonstrated mandatory intervention. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Proposed Intervenors' Joint Motion to Intervene as Defendants [**ECF No. 10**] is **GRANTED**. The Proposed Intervenors are bound as parties by all deadlines and scheduling orders presently in place and going forward.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 5th day of August, 2024.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**