## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-61890-CIV-DAMIAN

**STATE OF FLORIDA**,

      Plaintiff,

v.

**PETE BUTTIGIEG**, *et al.,*

      Defendants.

_____/

### OMNIBUS ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION/FOR SUMMARY JUDGMENT [ECF NO. 6], DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT [ECF NOS. 17 & 19], AND INTERVENORS' COMBINED OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION TO DISMISS [ECF NOS. 16 & 20]

THIS CAUSE is before the Court on Plaintiff, the State of Florida's ("Plaintiff," or the "State"), Motion for Preliminary Injunction/for Summary Judgment [ECF Nos. 6 & 7 ("Plaintiff's Motion")], filed October 10, 2023, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment [ECF No. 17 ("Defendant's Motion")], filed December 15, 2023, and Intervenors' Combined Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion to Dismiss [ECF Nos. 16 & 20 ("Intervenors' Motion")], filed December 18, 2023, (collectively, the "Motions").

THE COURT has reviewed the Motions and relevant briefing, the pertinent portions of the record, and pertinent authorities and is otherwise fully advised. The Motions are fully briefed and ripe for review. The Court also had the benefit of oral argument on August 26, 2024, where the parties, through counsel, addressed all of the Motions now before the Court. [ECF No. 31].

# I. BACKGROUND

The background is, for the most part, undisputed. The following is based on the background facts set forth in the Complaint and in the parties' Stipulation of Undisputed Facts, as well as Defendants' Statement of Facts. [ECF No. 18 ("Defendants' SOF")]; [ECF No. 21 ("Stipulation of Undisputed Facts")].[1]

## A.   *The Federal Transit Act.*

As laid out in the Complaint, under the Federal Transit Act ("FTA" or the "Act"), 49 U.S.C. § 5301(a), the State of Florida receives substantial federal funding for its public transportation systems which can be used to make improvements and repairs to public rail and bus systems. [ECF No. 1 ("Complaint") ¶ 25]; *see generally* § 5301(b)(1), (8) (laying out the law's purpose, including, *inter alia*, to "provide funding to support public transportation" and to "promote the development of the public transportation workforce"). According to the Complaint, Florida entities expect to receive close to $800 million in FTA funding in the coming years. *See* Compl. ¶ 27. This funding is, however, subject to conditions, set forth in § 5333(b) of the FTA, also known as § 13(c), which are administered by the U.S. Department of Labor ("DOL").[2] *Id.* ¶ 28. One of those conditions is that grantees, like the State and

---

[1] Although the Court, in its October 27, 2023 Order [ECF No. 11], instructed the parties to jointly file a stipulation of undisputed facts, Defendants filed a SOF concurrently with their Motion, appending an administrative record of the disputes between state transit systems and unions representing their employees (described more fully below). *See generally* ECF No. 18-1 ("AR"). The State does not dispute Defendants' SOF. Rather, it takes the position that the Stipulation of Undisputed Facts supersedes Defendants' SOF. [ECF No. 22 at 2 n.3]. Notably, as also pointed out by the State (*see id.*), the parties agree that the administrative record is accurate. Stip. ¶ 15. In any event, because Defendants' SOF remains undisputed, the Court considers the facts set out therein.

[2] Section 5333(b) is the codification of § 13(c) of the Urban Mass Transportation Act ("UMTA") of 1964. Although Defendants and Intervenors refer to the relevant provisions here as § 13(c), for the sake of consistency, this Order refers to its codification, § 5333(b).

Miami-Dade and Broward Counties, must agree to "arrangements the Secretary of Labor concludes are fair and equitable" to protect "interests of the employees" affected by the grants. *Id.* ¶ 29 (citing 49 U.S.C. § 5333(b)(1)).

As the State points out, Congress included these limitations to protect collective bargaining rights of unionized transit workers because the Act contemplated that some of the federal funds would be used by local governments to acquire failing private transit companies whereas some states had laws in place that forbade collective bargaining by state and local government employees. *See* Compl. ¶ 30 (quoting *Jackson Transit Auth. v. Amalgamated Transit Union*, 457 U.S. 15, 17 (1982)). Consistent with that purpose, the Act also requires that the "fair and equitable" arrangements approved by the Secretary of Labor "shall include provisions that may be necessary for . . . the continuation of collective bargaining rights." *Id.* ¶¶ 31–32 (citing 49 U.S.C. § 5333(b)(2)(B)).

In the instant case, the State and the DOL are at odds over the meaning and effect of the limitations in § 5333(b) requiring "provisions that may be necessary for . . . the continuation of collective bargaining rights" insofar as the State's recent passage of Senate Bill 256 is concerned.

**B.    *Senate Bill 256.***

Florida's Governor signed Senate Bill 256 ("SB 256")[3] into law in May 2023. Compl. ¶ 41. This case arose after the DOL determined that provisions of SB 256 conflict with the requirements for DOL certification for state transit systems to receive federal funding

---

[3] The full text of the bill is publicly available online. *See generally SB* 256, https://www.flsenate.gov/Session/Bill/2023/256/BillText/er/PDF (last visited, September 24, 2024).

assistance under the FTA, 49 U.S.C. § 5301(a). Stip. ¶ 15. SB 256, codified in Chapter 447, Florida Statutes, brings about some changes to how public sector employees and unions in Florida handle bargaining. *See* § 447.301, Fla. Stat. (2024). Three aspects of the Florida law are relevant here. The first requires public sector employees to sign a membership authorization form that states, in part, that the employee has the right to join and pay dues to a labor union or to refrain from joining and paying dues to a labor union. *Id.* § 447.301(1)(b)1.–3. The second prohibits all but a few public sector employers from deducting union dues from employee salaries and requires, instead, that these public employees pay dues "directly to the employee organization that has been certified as the bargaining agent." *Id.* § 447.303(1). And the third introduces a yearly renewal and recertification process for most public employee unions which requires that these public sector unions, in order to be "certified as a bargaining agent to represent a bargaining unit," have 60% of employees eligible for participation in the union paid dues to the organization. *Id.* § 447.305(6). If the union fails to meet this threshold, or if Florida's Public Employees Relations Commission ("PERC")[4] determines the application "is inaccurate or does not comply with this section," PERC may revoke the registration and certification of the union. *Id.* § 447.305(6), (7).

Notably, SB 256 also authorizes PERC to "waive" provisions of SB 256 "to the extent necessary for the public employer to comply with the requirements of [§ 5333(b)]." § 447.207(12). This particular provision, according to the State, came about because the Florida

---

[4] PERC is the Florida entity responsible for resolving labor and employment disputes between public sector employees, employers, and unions within the state. *See* §§ 447.205, 447.207, Fla. Stat. (2024).

Legislature "anticipated that the [DOL] might seek to deny [the State] federal funding." Pl.'s Mot. at 6.

### C.     *Certification Of Applications For Federal Assistance.*

When a state transit system applies for federal assistance under § 5333(b), the Department of Transportation ("DOT") refers each application to the DOL for certification. *See* Defs' SOF ¶ 3. The DOL then provides the applicant transit system and the union representing its transit employees the opportunity to raise any objections to certification. *Id.* ¶ 4 (citing 29 C.F.R. § 215). If objections are raised, the DOL directs the parties (the transit system and the union representing its employees) to engage in good faith negotiations to seek a mutually acceptable resolution. *Id.* ¶ 10 (citing 29 C.F.R. § 215.3(d)(3), (6)). The parties may waive negotiations if the DOL develops new terms acceptable to the parties that meet the requirements of § 5333(b). 29 C.F.R. § 215.3(d)(6). If no agreement is reached, the DOL ultimately decides the issues and determines whether to grant certification. *Id.* § 215.3(e).

### D.     *The Funding Applications That Precipitated The Instant Lawsuit.*

Beginning in early 2023, several Florida transit systems, including but not limited to Broward County Transit and Miami-Dade County Transit, submitted applications for funding. Defs' SOF ¶ 2 (citing Administrative Record ("AR") at 530, 1093).[5] In accordance with the procedures discussed above, the applications were referred by the DOT to the DOL for certification under § 5333(b). *Id.* ¶ 3. The unions representing transit employees objected to certification in part on grounds that SB 256's changes prevent the transit systems from continuing collective bargaining rights. *Id.* ¶ 7. In so doing, they noted that the transit systems

---

[5] This Order uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all filings.

and their employees were eligible for a waiver to be issued by PERC. *Id.* ¶ 8. No Florida transit systems, save for Escambia County Area Transit, filed responses to the unions' objections. *Id.* ¶ 9. Finding the objections sufficient, the DOL directed the parties to engage in negotiations to seek a mutually acceptable resolution. *Id.* ¶ 10.

The negotiations were unsuccessful, and the parties waived further negotiations and briefing in the matter. *See id.* ¶¶ 11–12. Instead, they requested that the DOL notify the transit agencies that adjustments in bargaining due to SB 256 impact compliance with grant funding conditions, and the parties further indicated that, upon such a determination, they would request a waiver from PERC. *See id.* ¶ 13–14. The DOL so notified the transit agencies. *Id.* ¶ 15.

Eventually, PERC granted the transit agencies' petitions for waivers and issued non-time limited waivers to prevent the transit systems from not receiving the federal funds. *See id.* ¶ 25. However, PERC expressed concerns over the DOL's interpretation of § 5333(b) and thus indicated that the waivers would "expire upon any final decision of [the] DOL or a court of competent jurisdiction declaring that the . . . provisions [of SB 256] do not violate the protections imposed by [§ 5333(b)]." *Id.* PERC's concerns emanated from the DOL's interpretation of how SB 256 purportedly conflicts with § 5333(b)'s requirements. That is, the DOL determined that the dues deduction prohibition (§ 447.303(1)) removes "a critical mandatory subject of collective bargaining." Defs' SOF ¶ 24. The DOL also determined that the yearly renewal and certification process for public transit unions (§ 447.305(6)) "undermines the presumption of the continuing majority status of . . . union[s]" and "expands the means and methods by which a union loses its right to act as the exclusive bargaining

6

agent for a transit authority's employees without regard to the existence of any evidence that the union has lost its majority status." *Id.* (citing AR at 652–53).

The State disagrees with the DOL's determination and alleges that the DOL's application of § 5333(b) to the State is unconstitutional. Pl.'s Mot. at 9. The State also contends that the Statute is itself unconstitutional on its face. *Id.*

## II. PROCEDURAL HISTORY

On October 4, 2023, the State filed a two-count Complaint for Preliminary and Permanent Injunctive and Declaratory Relief, naming the United States of America, the DOT, the DOL, and the relevant officials within those agencies as Defendants (collectively, "Defendants"). *See generally* Compl. In Count 1 of the Complaint, the State claims that § 5333(b) is unconstitutional because it violates the Spending Clause's requirement that, to pass constitutional muster, any attached condition to the grant of federal funds must be unambiguous. *See id.* ¶¶ 60–70. In Count 2, the State challenges the DOL's application of § 5333(b) pursuant to the Administrative Procedure Act (the "APA"), arguing that under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, . . . or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations." *Id.* ¶¶ 71–80 (quoting 5 U.S.C. § 706(2)(A), (C)). The State avers the DOL's determination that § 5333(b)(2)(B) requires that the State must waive certain provisions of SB 256 is contrary to law and arbitrary and capricious, and, alternatively, that the DOL's determination violates the APA because it is based on ambiguous terms in the statute.

In the Complaint, the State requests the Court grant the following relief: (1) preliminarily and permanently enjoin Defendants from enforcing § 5333(b)'s requirements and withholding federal funds from Florida transit agencies; (2) declare unconstitutional the

requirements in § 5333(b), facially and as applied to the State; and (3) in the alternative, declare that SB 256 complies with § 5333(b) and that Defendants must therefore provide the funding to the transit agencies, without the need for PERC's waivers. *See* Compl. at 17.

The State filed a Motion for Preliminary Injunction on October 10, 2023, seeking to preliminarily enjoin Defendants from enforcing the requirements of § 5333(b) against Florida entities or, alternatively, to order Defendants to provide the funding without requiring PERC to waive SB 256's provisions. *See generally* Pl.'s Mot. Upon the parties' joint motion for consolidated briefing schedule [ECF No. 8], the Court, on October 27, 2023, entered an Order converting the Motion for Preliminary Injunction into a motion for summary judgment and further consolidating the preliminary injunction hearing with a final hearing on the merits under Federal Rule of Civil Procedure 65(a)(2). *See generally* ECF No. 11.

The Intervenors, Amalgamated Transit Union International ("ATU") and Transport Workers Union of America ("TWU") (collectively, the "Intervenors"), which collectively represent several thousand transit employees in Broward and Miami-Dade counties, filed a Joint Motion to Intervene on October 24, 2023 [ECF No. 10]. This Court granted the Motion to Intervene on August 5, 2024, on grounds, generally, that the Intervenors have defenses that share questions of law and fact with the main action. *See generally* ECF No. 32.

All parties have submitted their briefing in accordance with the Court's October 27, 2023 Order. Specifically, on December 15, 2023, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment in opposition to Plaintiff's Motion [ECF No. 17, 19 ("Defendant's Motion")]. That same day, the Intervenors filed a Combined Opposition to

Plaintiff's Motion for Summary Judgment and Cross-Motion for a Dismissal of Florida's Claims [ECF Nos. 16, 20 ("Intervenors' Motion")].[6]

On January 26, 2024, the State filed a Combined Memorandum in Opposition to Defendants' Motion to Dismiss and Reply in Support of its Motion for Summary Judgment [ECF No. 22 (the "Pl.'s Memo")]. On February 23, 2024, Defendants and Intervenors filed Replies to the Opposition Memorandum. [ECF Nos. 23 ("Intervenors' Reply"), 24 ("Defendants' Reply")].

The Motions are fully briefed and ripe for adjudication.

### III. LEGAL STANDARDS

#### A.    *Motion To Dismiss.*

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where a plaintiff fails to state a claim upon which relief could be granted. While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), courts must accept the non-moving party's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

---

[6] Both Motions appear to have exact duplicates in the Court's docket (*see* ECF No. 19, as to Defendants' Motion, and ECF No. 16 as to Intervenors' Motion). It is unclear why that is the case, and the parties' briefing sheds no light on the matter. Regardless, this Order refers to the later-filed Motions.

However, this tenet does not apply to legal conclusions, as courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

  **B.  *Summary Judgment*.**

  "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In reviewing a motion for summary judgment, the Court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007)). Importantly, "at the summary judgment stage the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter," but only "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

  In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a

sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

"An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson*, 477 U.S. at 248). Further, "[f]or factual issues to be considered genuine, they must have a real basis in the record. For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted).

## V. DISCUSSION

With the foregoing in mind, this Court addresses the issues raised in the Motions now before it.

### A.     *The Arguments Set Out In The Parties' Memoranda.*

#### 1.     <u>The State's Motion For Summary Judgment.</u>

In its Motion for Summary Judgment, the State argues that it is entitled to summary judgment and a permanent injunction as to both claims asserted in its Complaint, which are: (1) that § 5333(b) violates the Spending Clause of the United States Constitution on grounds the law's requirement that Florida entities agree to "arrangements the Secretary of Labor concludes are fair and equitable" and the accompanying provisions set out in subsection (2)

are ambiguous; and (2) that the decision that SB 256 conflicts with the requirements of § 5333(b) violates the APA.

With respect to Count 1 of the Complaint, the State contends that § 5333(b) is unconstitutionally ambiguous because the terms governing Florida entities' receipt of transit funds contain no ascertainable conditions and fail to provide clear notice of the statute's conditional requirements for federal funding. Compl. ¶¶ 62–66. Relying in large part on *West Virginia by & through Morrisey v. U.S. Department of the Treasury*, 59 F.4th 1124 (11th Cir. 2023), the State avers that the phrases "fair and equitable," "may be necessary for . . . the continuation of collective bargaining rights," and "collective bargaining rights" are ambiguous. *See* Pl.'s Mot. at 9–11. The State cites three decisions in which it claims the courts concluded that § 5333(b) is ambiguous: *Amalgamated Transit Union, Int'l v. United States Dep't of Lab. ("ATU v. DOL")*, 647 F. Supp. 3d 875 (E.D. Cal. 2022); *Matter of New Jersey Transit Bus Operations, Inc.*, 592 A.2d 547, 557–59 (N.J. 1991); and *City of Macon v. Marshall*, 439 F. Supp. 1209, 1220 (M.D. Ga. 1977). *See* Pl.'s Mot. at 10. The State contends that, because § 5333(b) does not give it clear notice of what it must do to avoid losing federal assistance, the statute is unconstitutional. *See id.* at 13–14.

The State next posits that if the Court does not find that § 5333(b) is unconstitutional, then the Court should resolve any uncertainties or conflicts between SB 256 and § 5333(b) in favor of the State based on the clear statement rule. *See id.* at 14 (citing *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 815–16 (11th Cir. 2022)). According to the State, it should only have to waive the requirements of SB 256 if state law directly conflicts with § 5333(b), which the State claims the DOL has not proven. Pl.'s Mot. at 14. The State argues that § 5333(b) can be understood in different ways, such as proscribing the termination of bargaining rights

altogether or simply safeguarding collective bargaining rights from erosion. *See id.* More specifically, the State contends that SB 256 does not abolish collective bargaining or even significantly reduce those rights and that it may even strengthen employee rights by promoting union participation. Therefore, according to the State, the DOL's finding that SB 256 conflicts with the requirements of § 5333(b) was arbitrary and this Court should resolve any uncertainties in favor of the State under the clear statement rule. *See id.* at 15.

For these reasons, the State requests that the Court enjoin Defendants from enforcing the requirements of § 5333(b) against the State or, alternatively, require Defendants to provide the funding without the need for PERC to waive the requirements of SB 256.

**2.**     **Defendants' Motion To Dismiss/Motion For Summary Judgment.**

In their Motion, Defendants first argue that the Complaint should be dismissed for two reasons. First, Defendants contend that the State has not pointed to any actions by the DOT Defendants that have caused harm to the State or could support a claim and, therefore, that the claims must be dismissed as to the DOT Defendants. Defs.' Mot. at 13. Specifically, Defendants claim that the State's Complaint focuses on the Secretary of Labor and the DOL and makes clear that the DOL Defendants are responsible for the circumstances at issue here. *Id.* Second, Defendants contend that the State lacks standing to sue any of the Defendants because it has not demonstrated a valid injury caused by the DOL's application of § 5333(b). *Id.* at 13–14. Defendants point out that Florida's transit systems have not lost funding, given that they received their grants after DOL's certification, and that the changes to Florida's collective bargaining laws, including an express waiver provision, were willingly accepted by the transit systems. *See* Defs.' Resp at 14.

Alternatively, Defendants argue that the State's challenge to § 5333(b)'s funding conditions lacks merit because it falls short of the "especially demanding standard" applicable to its facial challenge. *Id.* at 15. Defendants contend that the State misinterprets the decisions in *West Virginia* and *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1 (1981), a case upon which the *West Virginia* decision rests. *See id.* According to Defendants, § 5333(b) clearly designates the Secretary of Labor to assess whether federal funding requirements are satisfied. *See id.* at 16. And, under the statute, transit agencies are not required to interpret the law themselves in deciding how to expend their funds; rather, the agencies must obtain certification from the Secretary of Labor, who interprets the law before the State receives the funds. *See id.* at 17. This framework, according to Defendants, does not violate Constitutional requirements since Congress explicitly assigned the responsibility to the Secretary of Labor to make these determinations, which is in line with practices that permit agencies to clarify spending conditions. *See id.* at 17–18.

Finally, Defendants aver that the State's APA claim against the DOL fails for several reasons: (1) the *Pennhurst* principle does not apply to this case; (2) § 5333(b) places the responsibility on the DOL, not the states, to ensure compliance; (3) the DOL's interpretation of § 5333(b) is reasonable and falls within its authority to maintain arrangements and uphold collective bargaining rights; (4) the DOL can evaluate state actions, such as SB 256, for compliance with regulations; (5) the DOL's determination that SB 256 infringes on collective bargaining rights is in line with federal labor policies; and (6) the State did not raise arguments during administrative proceedings that SB 256 does not impose burdens or that it enhances bargaining rights, so those points were not considered by the DOL in reaching its decisions. *See id.* 19–24.

### 3.   <u>Intervenors' Cross-Motion To Dismiss.</u>

In their Motion, the Intervenors offer several reasons why, in their view, the State's arguments concerning the constitutionality of § 5333(b) lack merit. First, they assert § 5333(b) has been part of the law since the UMTA's passage in 1964 and was reaffirmed by way of the FTA in 1991 without any challenges on the grounds raised here. Intervenors' Mot. at 11. And they argue the State's vagueness challenge lacks support and overlooks the decision in *Amalgamated Transit Union Int'l, AFL-CIO v. Donovan ("ATU v. Donovan")*, 767 F.2d 939 (D.C. Cir. 1985), in which the D.C. Circuit Court found that § 5333(b) offers clear and express guidelines. *Id.* at 11–12. Second, the Intervenors posit the State's reliance on the state and federal court judgments cited in its briefs is misplaced. *Id.* at 13. According to the Intervenors, the State's interpretation of these decisions, including *ATU v. Donovan*, distorts their conclusions, in which, in the Intervenors' view, the courts actually affirm the need for protection of bargaining rights under § 5333(b). *Id.* at 12–14. Third, the Intervenors claim an examination of § 5333(b)'s legislative history reflects that Congress intended to uphold existing labor rights without change and that the law aimed to preserve labor rights, contradicting the State's ambiguity assertions. *Id.* at 16–18. Finally, the Intervenors argue that Florida's reliance on cases like *West Virginia* is misplaced as the conditions outlined in § 5333(b) are more precise and less intricate than those at issue in those cases. *Id.* at 18.

The Intervenors also aver that the State's APA argument is flawed because, in their view, the conflict between SB 256 and § 5333(b) is clear. *Id.* at 19. The Intervenors aver that SB 256's ban on dues checkoff directly undermines protected collective bargaining rights under § 5333(b), which specifically includes the right to negotiate over dues checkoff as an issue. *Id.* The Intervenors also contend that SB 256's renewal and recertification requirements

also infringe bargaining rights by introducing a burdensome recertification process. *Id.* at 19–20. And, according to the Intervenors, the State's assertion that these changes do not pose burdens is not relevant because § 5333(b) absolutely requires the preservation of existing bargaining rights as a condition for transit funding regardless of the level of burden imposed. *See id.* at 20–21.

### 4.    The State's Memorandum In Opposition.

The State responds to the arguments of both Defendants and Intervenors in its Memorandum in Opposition. As to standing, the State claims it has a valid injury because it faces coercive pressure from the federal government that goes against its sovereignty. Pl.'s Memo at 4. Relying on *West Virginia*, the State argues that Eleventh Circuit precedent provides that a state can be harmed when it is compelled to accept funding with forceful conditions which continuously undermine the state's independence, even if there is no immediate, actual loss of funding. *Id.* at 4–5. The State maintains that its injury also arises from its inability to uphold its law, SB 256, because it faces pressure from the federal government to waive certain parts of its law or risk losing significant funds. *Id.* at 5–7. This pressure, combined with the challenge of implementing the remaining provisions of SB 256 is, according to the State, sufficient to create an injury for standing purposes. *Id.*

With regard to Defendants' argument that the State fails to assert a claim against the DOT Defendants, the State avers that the harm can be linked back to the DOT because the DOT is required to enforce funding conditions set by the DOL, even though it does not itself interpret these conditions. *Id.* at 7–9. The State claims that to remedy its injury, judicial relief must target all officials responsible for enforcement of the law. *Id.* at 9.

Next, the State contends that § 5333(b) is at odds with the limitations on Congress's power under the Spending Clause because the Clause demands that conditions on funds be explicit and straightforward. *Id.* According to the State, the Eleventh Circuit confirmed, in the *West Virginia* decision, that the clarity required under the Spending Clause must originate from the statute itself and not from agency interpretations. *Id.* Thus, in the State's view, the DOL's involvement in interpreting § 5333(b) raises concerns because the statute assigns to the Secretary of Labor the authority to determine what is "fair and equitable," effectively allowing the agency to define the funding condition. *Id.* at 9–10. The State argues that this delegation violates the Spending Clause, which stipulates that such powers should be exercised by Congress and not by executive agencies. *Id.* (citing *West Virginia*). Additionally, the State contends that the DOL's argument that § 5333(b) only impacts eligibility and not how funds are utilized does not cure the ascertainability problem. *Id.* at 11. According to the State, whether a condition affects eligibility or compliance, the conditions must be clearly defined within the statute itself. *Id.*

Finally, the State reiterates that the DOL's actions violate the APA. *Id.* at 12. Specifically, the State contends that because § 5333(b) is open to differing interpretations, under Eleventh Circuit precedent, the Court should adhere to the Spending Clause's clear statement rule, which mandates that Congress, not agencies, must clearly outline conditions tied to federal funding. *Id.* at 12–13. Such clarity, according to the State, should originate from the statute itself and not from the Secretary of Labor's interpretation of it. *See id.* at 14–15.[7]

---

[7] The State disputes Defendants' reference to the National Labor Relations Act ("NLRA") to interpret § 5333(b) on grounds the NLRA provisions do not extend to state laws and there is no indication in § 5333(b) suggesting alignment with NLRA definitions. *See* Pl.'s Memo at 17.

Therefore, the State asserts that, given the lack of clear Congressional intent and the broad discretion given to the DOL, the DOL's determination that SB 256 conflicts with § 5333(b) was contrary to the clear statement rule. *Id.* at 17–18.

### 5.    Defendants' Reply.

In their Reply, Defendants note the State's acknowledgement that this case centers on the issue of whether the above-discussed provisions of SB 256 conflict with the certification requirements set by the DOL. Defs.' Reply at 4. Replying to the State's contention that its purported injury is traceable to the DOT Defendants because they enforce the DOL's interpretation of the statute, Defendants argue that the DOT does not oversee the certification process and therefore cannot be directly tied to the State's injury. *Id.* at 4–5. Defendants posit that given this lack of direct connection, even if the Court disagreed with the DOL's interpretation, a ruling against the DOT would not resolve the issue. *Id.* Moreover, Defendants note that the State has not addressed Defendants' argument for dismissal of the DOT Defendants under Rule 12(b)(6) and that even if the Court finds the State has standing, all claims against the DOT Defendants should be dismissed for failure to state a claim. *Id.*

Defendants next argue that the claims against the DOL, based on the State's claim that it is being coerced into accepting a condition from the DOL that is unascertainable (citing *West Virginia*), should be dismissed for lack of standing. *Id.* at 5. According to Defendants, the *West Virginia* case is inapposite because, unlike the issues in that case, the State is not facing a recoupment threat, has not previously challenged § 5333(b) as coercive, and lacks any injury linked to the DOL's actions. *Id.* 5–6. Moreover, according to Defendants, the state transit systems have not objected to the DOL's interpretation of SB 256 *vis-a-vis* § 5333(b). *Id.* Defendants also take issue with the State's claim that it is being harmed because it is unable

18

to enforce its laws on grounds that this position is untenable since SB 256 expressly provides for waivers that permit the State's transit systems to continue to receive funding. *Id.* at 6. Defendants claim that § 5333(b) does not impede SB 256's enforcement and that this claim is therefore unsubstantiated. *Id.* at 7.

As to the State's arguments in support of summary judgment, Defendants persist in arguing that the State's reliance on the *Pennhurst* and *West Virginia* decisions is misplaced because § 5333(b) does not require transit systems to interpret the conditions for the receipt of federal funds. *Id.* at 7–8. Thus, according to Defendants, the clarity principle does not help the State here because § 5333(b) involves conditions clearly defined by the DOL that must be satisfied prior to receiving the funds. *See id.* at 7. Defendants posit that the State is conflating conditions on eligibility with conditions on compliance and that it erroneously interprets the clarity requirement as requiring that a state know in advance whether the enactment of new policies will threaten federal funding. *Id.* at 8–9. This, according to Defendants, is not supported by the authority relied on by the State because, under *Pennhurst*, the purpose of the clarity requirement is so that states can be "cognizant of the consequences of their participation" in their receipt of federal funds. *Id.* at 9. Defendants reiterate that the clarity requirement is not relevant when, as here, the statute is clear about what is required of funding recipients when they receive their funds. *Id.* The statute, according to Defendants, already provides enough guidance, and the discretion given to the DOL in implementing § 5333(b) is standard and permissible. *Id.* at 10.

Finally, Defendants aver that the State's failure to address Defendants' arguments regarding the State's arbitrary and capricious claim, including not responding to Defendants' arguments about the reasonableness of the DOL's interpretation, indicates abandonment of

this claim. *Id.* at 11. The State's only remaining APA claim, then, is that the DOL's interpretation violates the "clear statement rule" set forth in *Pennhurst*. Defendants maintain that this rule does not apply and that the State's reliance on the *Adams* decision is also misplaced because that case involved an altogether different type of funding condition. *Id.* Defendants also urge the Court to reject the State's argument that Defendants are improperly incorporating the NLRA into § 5333(b) because the DOL may consider federal labor law (including the NLRA) in construing the meaning of "collective bargaining rights." *Id.* at 12.

### 6. <u>Intervenors' Reply.</u>

In their Reply, the Intervenors largely adopt Defendants' arguments that the application of the clear statement rule in *West Virginia* and *Pennhurst* does not compel the same result in this case. *See* Intervenor's Reply at 4–6. Nevertheless, the Intervenors posit that § 5333(b) satisfies the clear statement rule and that Florida's attempts to distinguish *ATU v. Donovan* do not undermine the Intervenors' assertions that legislative history here supports their position. *Id.* The Intervenors also note that the only court decision that currently supports the State's arguments is currently on appeal (and, by the time of oral argument, had been vacated and remanded by the Ninth Circuit). *See id.* at 7–11.

Against this backdrop, the Court addresses the claims raised in the Complaint and the issues set out in the parties' memoranda.

### B. *Whether The State Has Standing.*

Article III of the United States Constitution limits federal courts to adjudicating only "cases" and "controversies." "Standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S.

167, 191 (2000). Standing does not depend on the merits of a plaintiff's claim. *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Rather, the "irreducible constitutional minimum of standing" requires three elements: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent," (2) a "causal connection between the injury and the conduct complained of," and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Further, "[i]n reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 994 (11th Cir. 2016) (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003)).

As discussed above, Defendants argue that the State fails to establish standing because the State does not identify an injury in fact caused by Defendants' application of § 5333(b). Defendants also insist that the State does not allege any action by the DOT that has caused it injury, pointing out that the State's Complaint rests exclusively on the application of § 5333(b), which is administered by the DOL.

The State claims it has standing to assert its claims based on two theories: (1) the State has sufficiently alleged that it suffered harm because the requirements of § 5333(b) are ambiguous; and (2) the State has satisfied the injury requirement because it is obligated to choose between waiving portions of SB 256 (thereby apparently evincing an inability to enforce its sovereign prerogatives) or losing federal funds. While acknowledging that the DOT is not charged with interpreting the conditions the State challenges here, the State also claims its injury is traceable to the DOT because the DOT administers the grants under § 5333(b) and must apply the DOL's determination of what is "fair and equitable."

Assuming the State would prevail on the merits, this Court finds that the State has sufficiently alleged an injury in fact based on its claim that it is forced to accept or reject an unascertainable funding offer.[8] *See West Virginia*, 59 F.4th at 1136 ("[An] injury to state sovereignty occurs when a state must accept or reject an unascertainable funding offer").

However, even assuming the State's claims would prevail, the State has not shown a causal connection between its injury and the DOT Defendants. As the State concedes, the DOT does not control the actions giving rise to the State's alleged injury and, assuming the Court were to grant the State the relief it seeks, an order against the DOT Defendants would not remedy the issues raised by the State concerning the administration of § 5333(b)'s conditions. *See Lewis v. Governor of Alabama*, 944 F.3d 1287, 1299 (11th Cir. 2019) (holding plaintiff did not have standing to seek declaratory judgment against state attorney general holding state statute invalid where statute at issue "envision[ed] no role for the Attorney General"). During argument before the Court, the State acknowledged that injunctive relief as to the DOL would address the injuries the State claims. Accordingly, the State's claims against the DOT Defendants do not satisfy the causal connection or redressability requirements and, as such, the State does not have standing to proceed with its claims against the DOT Defendants.[9]

---

[8] Having determined that the State has sufficiently alleged a basis for standing to assert its claims against the DOL Defendants, this Court need not address the State's alternative standing theory.

[9] Because this Court has found a lack of standing to proceed with claims against the DOT Defendants, the Court will not address Defendants' arguments that Florida fails to state a claim for relief against the DOT.

In sum, the State has standing to proceed with its claims against the DOL Defendants, but it has not shown that it has standing to proceed with its claims against the DOT Defendants. Accordingly, the Motion to Dismiss is due to be granted as to the DOT Defendants based on a lack of standing.

**C.      Whether § 5333(b) Exceeds Congress's Authority Under The Spending Clause.**

As discussed above, in Count 1 of the Complaint (asserted against the individual Defendants only), the State claims § 5333(b) is unconstitutional because it exceeds Congress's authority under the Spending Clause. The State lodges both an as-applied challenge to the constitutionality of the statute, as well as a facial challenge. Defendants argue the State has not established that § 5333(b) violates the Spending Clause, and, therefore, Count 1 of the Complaint should be dismissed or summary judgment should be entered in favor of Defendants.

Congress's spending power is encompassed in Article 1, Section 8, Clause 1 of the United States Constitution, which states that "Congress shall have the Power To . . . provide for the . . . general Welfare of the United States." The Supreme Court has "long recognized that Congress may fix the terms on which it shall disburse federal money to the [s]tates." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). The Supreme Court has likened Congress's ability to legislate pursuant to the Spending Clause to a contract: "[t]he legitimacy of Congress'[s] power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Id.*

In *Pennhurst*, the Supreme Court emphasized that "[t]here can . . . be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it

must do so unambiguously." *Id.* (citations and footnote omitted). Put differently, the Court expressed that a state cannot "knowingly" accept a condition if it is unable to ascertain exactly what that condition is. The Court expanded on this principle in *South Dakota v. Dole*, 483 U.S. 203 (1987), in which it identified five requirements that conditional funding statutes must meet to pass constitutional muster: (1) the expenditure must "advance the general welfare"; (2) any attached condition must be "unambiguous[ ]"; (3) conditions must relate "to the federal interest in particular national projects or programs"; (4) conditions cannot violate another constitutional provision; and (5) conditions cannot "be so coercive . . . [that] pressure turns into compulsion." *See id.* at 207–11; *see also* 63C Am. Jur. 2d *Public Funds* § 35 (2024).

The State asks this Court to declare § 5333(b) unconstitutional, both facially and as applied to the State, on grounds it is not unambiguous. In considering the State's request, this Court is mindful that "[o]ne of the most notable canons of statutory construction that courts apply when reviewing agency action is to avoid, where reasonably possible, statutory constructions that raise serious constitutional concerns." 33 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8440 (2d ed. 2024). Thus, "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 173 (2001) (quoting *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)).

With the foregoing in mind, the Court turns to the State's challenges to the constitutionality of § 5333(b).

### 1.     <u>Conditions On The State's Expenditures Of Federal Funds.</u>

The State argues that § 5333(b) violates the Spending Clause as applied to the State on grounds it imposes conditions on the grant of federal funds that are ambiguous. According to the State, because the terms "fair and equitable" and "continuation of collective bargaining rights" are ambiguous, the State cannot knowingly accept the conditions tied to the grant of funds. In support, the State relies on the Eleventh Circuit's *West Virginia* decision. In *West Virginia*, the Eleventh Circuit considered whether a tax offset provision in the American Rescue Plan Act that prohibited states from using federal funds "to either directly or indirectly offset a reduction in [their] net tax revenue that results from a change in law that reduces any tax" exceeded Congress's authority under the Spending Clause. 59 F. 4th at 1132 (alteration in original) (internal quotation marks omitted) (quoting 42 U.S.C. § 802(c)(2)(A)). Relying on *Pennhurst*, the court considered the ability of the states to knowingly accept the federal funds subject to the "directly or indirectly" condition, which it found to be ambiguous. *Id.* at 1140–41. Importantly, in that case, the states had to interpret the "directly or indirectly" language in the Act when determining how to expend the funds after they received them. The Eleventh Circuit observed that it was "unable to surmount the linguistic hurdle before [it]." *Id.* at 1145. Thus, the court held that the provision facially violated the Spending Clause because the terms governing the states' acceptance of the funds were unconstitutionally ambiguous.

This Court agrees with Defendants and Intervenors that the circumstances presented here are materially different from those in the *West Virginia* case. Consider the following hypothetical: rather than the framework set out in § 5333(b) (and illustrated above), assume that § 5333(b) required states to spend federal funds for transit systems only where the *expenditure* is fair and equitable in furthering the continuation of collective bargaining rights.

Under this framework, a state would have to interpret the statute when deciding how to spend the funds in a "fair and equitable" manner that ensures the continuation of collective bargaining rights. In that scenario, it could be said that the state is unaware of the conditions or terms imposed on it when accepting the federal funds. But that is not the scenario presented here.

In the circumstances presented here, the State is not required to accept conditions of which it is unaware or which it cannot ascertain when accepting the transit funds because, under § 5333(b), by the time the State accepts the federal funds, the Secretary of Labor has already determined that the State's expenditures are fair and equitable. That is, by the time the State accepts the funds, there are no rules attached to the expenditure of the funds that the State is required to interpret. Unlike *Pennhurst* or *West Virginia*, where the states were required to accept funds before knowing whether their expenditures of those funds would satisfy the respective statutes' requirements, under the framework of § 5333(b), if Florida transit entities are receiving disbursements of funds, it has already been determined that their planned expenditures of the funds satisfy the statute.

Therefore, under the circumstances presented in the instant case, this Court disagrees with the State's contention that the *Pennhurst* and *West Virginia* decisions compel a finding that § 5333(b) is unconstitutional on grounds it requires the State or its transit entities to accept funds under ambiguous conditions. To the contrary, this Court finds that any ambiguities in the statutory language do not render the statute unconstitutional because, under the circumstances, they do not affect the State's or its transit entities' expenditures of grant funds.

26

2.   **Conditions On Eligibility To Receive Funds.**

The State argues that the statute is nevertheless unconstitutional as applied to the State because "courts treat both eligibility conditions and compliance conditions as subject to the same requirements under the Spending Clause." Pl.'s Memo at 11 (citing *Dole*, 483 U.S. at 205). According to the State, the statute's ambiguities impact the conditions governing whether it is eligible to receive the funds in the first place. Thus, the statute unconstitutionally placed the State in the untenable position of speculating whether its legislation, here SB 256, conflicts with the ambiguous terms of § 5333(b), thereby making the State ineligible to receive such funds, before it drafted the legislation. Defendants argue that the State has offered no authority in support of this theory and that the State's reliance on *Dole* for this principle is misplaced.

In *Dole*, the Supreme Court's analysis did not focus on whether the conditional nature of the statute in question there (which withheld federal highway funds from states allowing the purchase of alcoholic beverages by persons under twenty-one (21) years of age) was clear and unambiguous for the purpose of compliance with the Spending Clause. 483 U.S. at 205. Instead, the *Dole* Court focused on whether the funding condition was independently barred by other constitutional provisions and on whether "the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'" *Id.* at 208–211 (quoting *Charles C. Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937)). The Court concluded that the statute's conditions were not coercive and reasoned that the conditions served as a "relatively mild encouragement [by Congress] to the [s]tates" in light of the fact that South Dakota would only lose 5% of the funds otherwise obtainable if it adhered to its chosen course, a prerogative left entirely to the state. *Id.* at 211.

As Defendants and Intervenors contend, the *Dole* Court's analysis does not support the State's argument that the statute's conditions on eligibility make the statute unconstitutional.[10] On the other hand, in *ATU v. Donovan*, cited by Defendants and Intervenors on this point, the D.C. Circuit Court made the more relevant observation that § 5333(b)'s "fair and equitable" language confers broad discretion on the DOL to follow the statute's mandatory and express requirements, which provide "clear guidelines" for determining whether DOL certification for funding may be lawfully given. 767 F.2d at 945–46.

In short, the State has not offered any authority that supports its argument that § 5333(b)'s eligibility requirements render the statute unconstitutional on grounds it was unclear to the State when drafting SB 256 whether that legislation would make the State's grantees ineligible for funds. Based on a plain reading of the text of the statute, this Court is not otherwise persuaded that they do. *See In re Tennyson*, 611 F.3d 873, 877 (11th Cir. 2010) ("When the plain reading of a statute produces an unambiguous and reasonable definition of a term, we will not look past that plain reading and read into the text of the statute an unstated purpose."). To the contrary, this Court agrees with the D.C. Circuit's observation in *ATU v. Donovan* that the text of § 5333(b) expressly and unambiguously confers broad discretion on the DOL to determine whether DOL certification for funding may be lawfully given based on the parameters set forth in the statute. 767 F.2d at 945–46. In the absence of authority supporting the claim that grantees must know in advance if the Secretary of Labor is going to approve proposed legislation, this Court finds the State has not shown that it is entitled to

---

[10] To the extent *Dole* analyzes the coerciveness of conditions, the State has not challenged § 5333(b) on this basis. It only mentions "coercion" for the first time in its Opposition Memorandum and in the context of standing.

judgment as a matter of law that the statute is unconstitutional as applied to it on such grounds.

On the other hand, Defendants have shown that the text of § 5333(b) expressly and unambiguously gives the Secretary of Labor the authority to determine whether grantees are eligible for funds. Thus, where, as here, the Complaint is based on the Secretary's exercise of that authority, this Court finds that Defendants have shown, as a matter of law, that the State has not demonstrated that the statute violates Congress's Spending Power as applied to the State under the circumstances presented in this case.

### 3. Whether Ambiguities In § 5333(b) Render The Statute Facially Unconstitutional.

For the reasons discussed above, this Court finds that the State has not established that § 5333(b), as applied to the State, violates the Spending Clause based on conditions attached to State entities' expenditures of funds nor those affecting their eligibility to receive funds. The Court has also considered authority cited by the State in support of its claim that the statute is facially unconstitutional because of ambiguous terms governing the grant of funds.

As Defendants point out, the State must satisfy a very heavy burden to establish that a statute is unconstitutional on its face. *See Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013). As the Eleventh Circuit explained that burden:

> "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000). "[W]hen a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner." *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007). Put another way, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). The Supreme Court reaffirmed *Salerno*'s validity as recently as 2010, *see United States v. Stevens*, 559 U.S. 460, 130 S. Ct. 1577, 1587, 176 L. Ed.2d 435 (2010) (citing *Salerno*, 481 U.S. at 745, 107 S. Ct. 2095), and, just last year, a panel of this Court

reiterated that the strict "no set of circumstances" test is the proper standard for evaluating a facial challenge. *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1255 & n.19 (11th Cir. 2012).

*Id.* at 863. "As a general matter, courts strongly disfavor facial challenges." *Id.* at 864. The court went on to admonish:

> Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.

*Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008)). The State has not carried that heavy burden here.

The State relies on the decision in *ATU v. DOL*, 647 F. Supp. 3d 875 (E.D. Cal. 2022), in support of its position that the conditions in § 5333(b) are so ambiguous as to render the statute unconstitutional on its face. In *ATU v. DOL*, the district court considered whether the DOL violated the APA when it publicized its intent to deny prospective federal mass transit funds to local transit agencies throughout California. *See generally id.* at 896–900. The district court evaluated whether the DOL had acted within the scope of its authority under § 5333(b)'s provisions and ultimately concluded, based on the statute's language, that § 5333(b) did not grant the agency "authority to adopt broad regulations or guidance for future cases." *Id.* at 899. However, at the time the State filed its memoranda in this case, the *ATU v. DOL* case was pending on appeal before the Ninth Circuit. On July 29, 2024, the Ninth Circuit vacated the judgment and remanded the case to the district court with instructions to dismiss for lack of jurisdiction. *Amalgamated Transit Union Int'l v. U.S. Dep't of Lab.*, No. 23-15503, 2024 WL

3565264, at *2 (9th Cir. July 29, 2024). Notably, the district court did not declare § 5333(b) facially invalid in *ATU v. DOL*. In any event, to the extent the court did determine the statute's terms are ambiguous, the opinion has no legal effect. *See Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) (observing vacated opinions are void and have no legal effect, notwithstanding their persuasiveness). And, of course, although cases from other Circuits may have persuasive value, courts in this Circuit are not obliged to follow cases from other Circuits. *See, e.g.*, *Finkbohner v. United States*, 788 F.2d 723, 726 (11th Cir. 1986). For all these reasons, the district court's analysis in *ATU v. DOL* is of little value here.

The State also offers a quote from the decision in *Matter of New Jersey Transit Bus Operations*, 592 A.2d 547 (N.J. 1991), to support its position that the relevant provisions of § 5333(b) are unconstitutionally ambiguous. *See* Pl.'s Mot. at 10 ("Another court complained that 'there is virtually no guidance' to determine their meaning and even acknowledged that 'we know very little . . . what the . . . condition[s] mean[].'" (citing *Matter of New Jersey*, 592 A.2d at 65)). In that case, the New Jersey Supreme Court considered whether the state's legislature intended to preserve collective bargaining rights of private sector transit employees in light of the enactment of a statute that converted its mass-transit system to one operated by the state. *Matter of New Jersey*, 592 A.2d at 548, 554. After observing that the relevant provisions of § 5333(b) gave little guidance on their meaning, the court nevertheless answered the question before it in the affirmative. In doing so, the court pointed out that the state's legislators were cognizant of the conditions set out in § 5333(b) and that "they must have been aware of the need to protect the labor relation rights" of the private transit employees. *Id.* These observations by the New Jersey Supreme Court are *dicta* and add little if anything to the issues now before this Court.

This Court finds that although the terms "fair and equitable" and "continuation of collective bargaining rights" may be viewed, in isolation, as somewhat vague, the State has not carried its heavy burden of showing that no set of circumstances exists under which the statute would be valid.[11]

In sum, the State has not demonstrated that it has been presented with a scenario in which it is required to accept funds under unconstitutionally ambiguous conditions. Nor has it demonstrated that the statute is facially unconstitutional. Therefore, this Court declines the State's request for a declaration that § 5333(b) is unconstitutional. As the State has failed to demonstrate that the statute is unconstitutional, the State's Motion for Summary Judgment is due to be denied as to Count 1 of the Complaint, and the DOL Defendants' Motion for Summary Judgment is due to be granted.

### D.   Whether The DOL's Interpretation Of § 5333(b) Violates The APA.

In Count 2 of the Complaint (asserted against all Defendants), the State alleges the DOL violated the APA because the DOL's determination that § 5333(b)(2)(B) requires the State to waive certain provisions of SB 256 is "arbitrary and capricious" and because the clear-statement rule requires ambiguities in the statute to be resolved in the State's favor. *See* Compl. ¶¶ 72–80. In its Motion for Summary Judgment, however, the State only advances its claim that an APA violation occurred because of the statute's ambiguity. The State does not argue

---

[11] While not determinative, this Court also has not overlooked Defendants and Intervenors' point that the conditions set out in § 5333(b) have been in effect since 1964 under the UMTA, and, although it has been challenged many times in those sixty years, no court has expressly found that the statute unconstitutionally exceeds Congress's spending power. As the Eleventh Circuit observed in *West Virginia*, the age of a law may be considered when deciding whether there is a constitutional problem as a "lack of historical precedent often signals a severe constitutional problem." 59 F.4th at 1145 (internal quotation marks omitted) (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 505 (2010)).

that the DOL's actions were arbitrary and capricious in either its Motion or in its Opposition Memorandum. Because it has not pursued an arbitrary and capricious claim in the Motion or briefs, the Court considers this argument abandoned. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

The Court thus turns to the State's claim, based on the clear-statement rule, that the DOL violated the APA by finding that SB 256 conflicts with the requirements of § 5333(b). On this point, the State relies on the decision in *Adams v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022), and alleges that Eleventh Circuit precedent requires this Court to adopt a narrow interpretation of the phrase "continuation of collective bargaining rights" because of the clear statement rule. Compl. ¶ 74. The State further alleges that "if Congress intended to prevent [the State] from incrementally reforming the collect[ive] bargaining process," it was required to use more clear language. *Id.* ¶ 75. Put differently, the State argues that "[b]ecause § 5333(b) does not unambiguously prevent [the State] from implementing SB 256's reforms, the [DOL]'s actions are contrary to law under the APA." Pl.'s Mot. at 15.

Defendants that the *Adams* decision, like the *Pennhurst* and *West Virginia* decisions, is inapposite because, unlike the conditions in those cases, § 5333(b) does not require the State or the DOL to construe the statute after the State receives the funds. Defs.' Mot. at 19–20. Instead, here, the DOL construes the requirements of the statute before a transit agency receives funds. *Id.* Defendants go on to argue that Congress expressly and unambiguously gave the DOL broad discretion to interpret the provisions of § 5333(b). *Id.*

The clear statement principle "demand[s] that Congress provide the [s]tates with a clear statement when imposing a condition on federal funding because 'legislation enacted

pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.'" *Adams*, 57 F. 4th at 816 (citing *Pennhurst*, 451 U.S. at 17). The statutory condition in *Adams*, which concerned Title IX's prohibition of discrimination on the basis of sex, was a condition attached to the state's receipt of federal funds. *Id.* at 811–15. Like the circumstances in the *West Virginia* case, discussed above, in *Adams*, the state was faced with a scenario in which it had to accept funds without clear guidance on the conditions tied to its expenditures of those funds. *See id.*

As explained above, that is not the scenario presented here. Under § 5333(b)'s funding condition, the Secretary of Labor has already determined that the statute's conditions have been met before the State receives the funds. Therefore, the *Adams* decision is not persuasive insofar as the circumstances presented in this case are concerned. The State offers no other authority in support of its contention that the DOL's interpretation of § 5333(b) violates the APA.

As discussed above, a reading of the statute's plain text reflects that Congress gave the DOL the authority to construe § 5333(b) to determine whether provisions that affect employee collective bargaining rights are "fair and equitable." The State offers no authority to support a finding that the DOL violated the APA where the DOL did what Congress said it could do. Thus, the State's argument that the DOL's interpretation of § 5333(b) violates the APA based on the clear statement rule is unavailing, and, as such, the State's Motion is due to be denied as to Count 2. Moreover, because the plain text of the statute directs the Secretary of the DOL to make the determination whether the conditions at issue are "fair and equitable," the State has not alleged a basis for relief under the APA where the Secretary has done what the statute

unambiguously says it can do. Therefore, Defendants' Motion is due to be granted as to Count 2.[12]

In light of this Court's finding that the State is not entitled to relief under the APA, there is no basis for this Court to review the Secretary's conclusion that provisions of SB 256 must be waived for the State's transit entities to receive funding pursuant to § 5333(b).

## IV. CONCLUSION

In the Complaint, the State requests this Court enjoin Defendants from withholding grants from the State's transit entities based on 49 U.S.C. § 5333(b); declare § 5333(b) unconstitutional both as applied and facially; and hold unlawful and set aside the DOL's decision that the State must waive provisions of SB 256 in order to be eligible for funding. For the reasons set forth above, this Court finds that although the State has standing to assert its claims against the DOL Defendants, the State does not have standing to proceed with its claims against the DOT Defendants. Further, the State has not satisfied its burden of demonstrating that § 5333(b) violates the Spending Clause or is unconstitutional either as applied to it or on its face. Nor has the State shown that the DOL's decision violates the APA based on a violation of the clear statement rule. Therefore, the State is not entitled to the injunctive nor declaratory relief it seeks. As such, Defendants' Motion is due to be granted and the State's Motion is due to be denied.

Accordingly, for the reasons set forth above, it is

**ORDERED AND ADJUDGED** as follows:

---

[12] In light of the finding that the State's APA claims fail, the Court does not address the Intervenors' arguments regarding the clear statement rule.

1.      Florida's Motion for Preliminary Injunction/Summary Judgment [**ECF No. 6**] is **DENIED**;

2.      Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [**ECF Nos. 17 & 19**] is **GRANTED**; and

3.      Intervenors' Combined Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion to Dismiss [**ECF Nos. 16 & 20**] is **DENIED AS MOOT**.

4.      The Court will enter a judgment by separate order.

5.      The Clerk is directed to **CLOSE** this case for administrative purposes.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 27th day of September, 2024.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**